IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LINDA BERKERY** : | **CIVIL ACTION** |
| *Plaintiff-pro se* : | |
| : | **NO. 14-5265** |
| v. : | |
| : | |
| **WISSAHICKON SCHOOL BOARD,** *et al.,* : | |
| *Defendants* : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                         MARCH 27, 2015

## MEMORANDUM OPINION

### INTRODUCTION

Before this Court are a motion to dismiss filed by Defendants[1] pursuant to Federal Rule of Civil Procedure (Rule) 12(b)(6), which seeks the dismissal of civil rights claims asserted against them under 42 U.S.C. §1983 ("§1983"), [ECF 14], and the response in opposition filed by Linda Berkery ("Plaintiff"). [ECF 16]. The issues in the motion to dismiss have been fully briefed[2] and, for the reasons stated herein, said motion is granted.

### BACKGROUND

On September 15, 2014, Plaintiff, proceeding *pro se*, filed a nine-count complaint against Defendants seeking monetary damages for their alleged violation of her civil rights under §1983 and other state law claims. [ECF 1]. In the complaint, Plaintiff avers that when Defendants

---

[1] Named as Defendants are the following: the Wissahickon School Board, Wissahickon School District, Wade T. Coleman, Catherin Rossi, and Marie E. Carsillo (collectively, "Defendants").

[2] In ruling on Defendants' motion to dismiss, this Court has also considered Plaintiff's request for judicial notice, [ECF 15], Plaintiff's opposition to Defendants' motion for leave to file a reply brief, [ECF 19], Defendants' response to Plaintiff's opposition, [ECF 20], and the allegations contained in the complaint. [ECF 1].

suspended her without pay for three days from her position as a van driver for the Wissahickon School District ("WSD"), they violated her due process and equal protection rights under the Fourteenth Amendment and retaliated against her for exercising her First Amendment right.

On November 6, 2014, Defendants filed the instant motion which Plaintiff opposes. When ruling on a motion to dismiss, this Court must accept, as true, all relevant factual allegations in the complaint. Here, Plaintiff's allegations can be summarized as follows:

> Plaintiff began working for the WSD, on November 6, 2006, originally as an aide. (Comp. ¶¶14-15). She became a school van driver in November 2009, assigned to transport special needs students from the Gwynedd area to the Overbrook School for the Blind ("OSB") in Philadelphia. (Id.). Her designated work hours for the OSB run were from 6:15 a.m. until 9:15 a.m., and from 1:15 p.m. until 4:30 p.m. (Id. at ¶15).
>
> Plaintiff suffered a hand injury and took medical leave in January 2013. She returned to her position as a van driver at the start of the next school year in the fall of 2013. (Id. at ¶¶16-17). Her bus route was covered by a temporary worker. On September 9, 2013, Plaintiff was advised to see her supervisor, Defendant Carsillo, the next morning. (Id. at ¶18). At said meeting, Defendant Carsillo informed Plaintiff that while she had been on medical leave, her OSB run had been completed in less time than she had the previous year, (id. at ¶18); that Defendant Rossi expected Plaintiff's OSB run to take less than six hours; and, if it did not, Defendant Rossi would ride with her on the run. (Id. at ¶18). Plaintiff responded that Defendant Rossi could accompany her on the run because it would show that the run took six hours. (Id. at ¶18). A few days later, Plaintiff asked Defendant Carsillo to have Defendant Rossi ride with her during her OSB run because Plaintiff felt she was being falsely accused of inflating the time worked and was being pressured to speed during her route. (Id. at ¶19). Plaintiff made the same request a third time to no avail. (Id. at ¶20).
>
> On October 7, 2013, Defendant Carsillo taped a note to the front of Plaintiff's mailbox which read: "Linda – Your A.M. punch time except for Mondays is 6:45 not 6:15. Thank you, Marie 10/7." (Id. at ¶21). The next day, Plaintiff followed the taped instructions, punched in at 6:45 a.m., (Id. at ¶22), and arrived late to pick up and drop off her students. (Id. at ¶23).
>
> Later that same day, Defendant Carsillo left another taped note asking Plaintiff to see her before leaving. (Id. at ¶25). Plaintiff met with Defendant Carsillo, and with a union representative Defendant Carsillo had arranged to be present. (Id. at ¶26). At the meeting, Defendant Carsillo was upset because parents of the student who Plaintiff transported that morning had called when the

2

van did not arrive on time. (*Id.* at ¶27). Defendant Carsillo reiterated that the run could be completed faster as shown by the substitute driver used when she was on medical leave. (*Id.*). Plaintiff again requested that someone ride with her to verify the amount of time needed to complete the route. (*Id.*).

Over the next several days, Plaintiff clocked in at 6:45 a.m., as instructed, which caused her to be late in dropping off her student at OSB. (*Id.* at ¶¶30-35).

Upon returning from her morning OSB run on October 16, 2013, Plaintiff encountered a union representative who informed Plaintiff that Defendant Carsillo wanted to see Plaintiff in Carsillo's office. (*Id.* at ¶44). Plaintiff and the union representative went into Carsillo's office, and Carsillo advised Plaintiff that "there's a meeting tomorrow at Central at 12:45 and you have to be there. It's to discuss the issue." (*Id.* at ¶45). Plaintiff called her Union President, Tom Finnegan, that evening and arranged to meet him the next day prior to the meeting with Defendant Carsillo. (*Id.* at ¶¶46-47).

The next day, Plaintiff met with Union President, Tom Finnegan, and another union representative prior to the meeting. (*Id.* at ¶48). Plaintiff went to the meeting with her union representatives. (*Id.*). At the start of the meeting, Plaintiff was asked to write down on a pad anything unusual that had happened on her OSB run that week. (*Id.*). Plaintiff complied and gave the pad to Defendant Coleman. (*Id.*).

Plaintiff was asked to describe any interaction she had with her student's family and the OSB aide during the morning pickup. (*Id.* at ¶51). Defendant Coleman also asked "a couple hypothetical questions," including: "Do you think it would be right for you to discuss with the OSB school aide whether a late arrival by the student would interfere with student's schooling?" and "Do you think it would be wrong of you to refuse to accept a paper with directions to the OSB from your supervisor, saying 'I've been doing this run for years and I'll do it my way.'" (*Id.*). Plaintiff denied the implications. (*Id.* at ¶¶51-52). During the meeting, Defendant Rossi informed Plaintiff that she and Defendant Carsillo had followed Plaintiff during one of her routes, and observed Plaintiff straying from the route, following a SEPTA bus instead of passing it, and speeding through two school zones. (*Id.* at ¶¶53-54).

Plaintiff left the meeting and her union representatives remained to continue discussing the matter with Defendants. (*Id.* at ¶¶56-58). At the conclusion of the meeting, Union Representative Martin told Plaintiff that Defendants had wanted to terminate her employment but that they finally settled on a three-day suspension without pay. (*Id.* at ¶58).

On October 25, 2013, attorney David A. Avedissian wrote a letter to WSD Superintendent Judith Clarke on behalf of Plaintiff demanding that "defendants

3

rescind the constitutionally defective procedures used against Plaintiff." (*Id.* at ¶59).

**LEGAL STANDARD**

When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). The court must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). The complaint must do more than merely allege the plaintiff's entitlement to relief; it must "show such an entitlement with its facts." *Id.* (citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)) (alterations in original). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.* To survive a motion to dismiss under Rule 12(b)(6), "a plaintiff must allege facts sufficient to 'nudge [his] claims across the line from conceivable to plausible.'" *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).

**DISCUSSION**

In the complaint, Plaintiff asserts that Defendants violated her due process and equal protection rights guaranteed by the Fourteenth Amendment, and retaliated against her for exercising her First Amendment rights. Each of these claims will be addressed separately.

In general, to state a claim under §1983, a plaintiff must allege the violation of a right secured by the Constitution and/or laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999); *Morrow v. Balaski*, 719 F.3d 160, 165-66 (3d Cir. 2013). Section 1983 does not provide substantive rights, but instead, "provides a remedy for the deprivations of rights established elsewhere in the Constitution or federal laws." *Kopec v. Tate*, 361 F.3d 772, 775-76 (3d Cir. 2004). Thus, to establish a §1983 violation, Plaintiff must allege facts sufficient to establish that Defendants, acting under color of state law, deprived Plaintiff of a right secured by the Constitution or by the laws of the United States. *See Robb v. City of Philadelphia*, 733 F.2d 286, 290-91 (3d Cir. 1984). Here, for purposes of §1983, it is undisputed that Defendants, a public high school, its school board, and its school board members, are state actors. *See Daniels v. School Dist. of Philadelphia*, 982 F.Supp.2d 462, 477 (E.D. Pa. 2013); *Mohammed v. School Dist. of Philadelphia*, 355 F.Supp.2d 779, 782 (E.D. Pa. 2005).

As to the second prong, a governmental entity, such as a public high school and/or its board may not be held liable under §1983 for constitutional violations caused solely by its employees or agents under the principle of *respondeat superior*. *Monell v. New York Department of Social Services*, 463 U.S. 658, 690 (1978). Rather, public entities, such as Defendants, may be held liable under §1983 for monetary, declaratory, or injunctive relief only where the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. *Id.* at 694. Thus, liability may be imposed on a public entity where its official "policy or custom" "causes" an employee to violate another's constitutional rights. *Id.*; *see also Brown v. School*

*Dist. of Philadelphia*, 456 F. App'x 88, 90 (3d Cir. 2011) (citing *Santiago v. Warminster Twp.*, 629 F.3d 121, 135 (3d Cir. 2010)).

As set forth by the Third Circuit Court of Appeals:

> A governmental policy or custom can be established in two ways. Policy is made when a "decision maker possess[ing] final authority to establish municipal policy with respect to the action" issues an official proclamation, policy, or edict. A course of conduct is considered to be a "custom" when, though not authorized by law, "such practices of state officials [are] so permanent and well-settled" as to virtually constitute law.

*Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990). The existence of a custom "requires proof of knowledge and acquiescence by the decision maker." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009). In either instance, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990); *see also Andrews*, 895 F.2d at 1480.

To establish municipal liability, a plaintiff must first show an underlying constitutional violation. *See Marable v. West Pottsgrove Twp.*, 176 F. App'x 275, 283 (3d Cir. 2006) ("[A] municipality may not incur *Monell* liability as a result of the actions of its officers when its officers have inflicted no constitutional injury."). Thus, in order to state a §1983 claim against Defendants, Plaintiff must allege facts to establish: (1) the deprivation of a constitutional right; and (2) that such deprivation arose out of an official policy or custom of Defendants. With these legal principles in mind, Plaintiff's §1983 claims will be addressed.

### *Plaintiff's Fourteenth Amendment Procedural Due Process Claim*

At Count I, Plaintiff asserts that her three-day suspension without pay violated her due process protections under the Fourteenth Amendment because she was neither provided notice

nor an adequate hearing consistent with the mandates of *Cleveland Board of Educ. v. Loudermill*, 470 U.S. 532 (1985). (Comp. at ¶89). To state a claim for the deprivation of procedural due process, Plaintiff must allege that: (1) she was deprived of an individual interest encompassed within the Fourteenth Amendment's protection of life, liberty or property; and (2) the procedures available to her did not provide due process of law. *Biliski v. Red Clay Consol. Sch. Dist. Bd. of Educ.*, 574 F.3d 214, 219 (3d Cir. 2009); *Hill v. Borough*, 455 F.3d 225, 233-34 (3d Cir. 2006). Defendants do not contest that Plaintiff has a constitutionally protected property interest in not being suspended from her job. *See Schmidt v. Creedon*, 639 F.3d 587, 589, 595 (3d Cir. 2011) (holding that a police officer had a protected property interest in not being suspended from his job). Defendants assert, however, that Plaintiff was provided all of the process that she was due.

In *Loudermill*, the U.S. Supreme Court held that a public employee with a property interest in employment is entitled to a pretermination hearing prior to an action of removal. *Loudermill*, 470 U.S. at 546. However, "the pretermination 'hearing,' though necessary, need not be elaborate." *Id.* at 545. The hearing "need not definitively resolve the propriety of the discharge," rather, "[i]t should be an initial check against mistaken decisions – essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Id.* at 545-46. Critically, in a pretermination hearing, an employee is entitled to "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present [employee's] side of the story." *Id.* at 546. These requirements have been extended to employment situations where the employee was suspended without pay, rather than terminated. *See Schmidt v. Creedon*, 639 F.3d 587, 596 (3d Cir. 2011); *Gniotek v. Philadelphia*, 808 F.2d 241, 244 (3d Cir. 1985).

7

Notice is deemed sufficient if it apprises the employee of the nature of the charges, the general evidence against the employee and is timely, under the particular circumstances of the case. *Gniotek*, 808 F.2d at 244. However, notice need not be provided prior to a presuspension hearing, so long as the timing of the notice does not prevent the employee from presenting her/his side of the story. *Id.* at 244-45; *Schmidt*, 639 F.3d at 597.

Under the facts pled, Plaintiff received all the due process owed her prior to her suspension. As for the notice requirement, Plaintiff alleges that she was advised of her performance issues which underlined her eventual suspension *one month prior* to her October 17, 2013 hearing and suspension. Specifically, in her complaint, Plaintiff avers that in early September she attended a meeting with her supervisor during which performance issues specifically regarding the length of time it took her to perform her run were raised. (Comp. at ¶18). As a result of that meeting and several subsequent discussions and/or communications with Plaintiff's supervisor regarding her performance, Plaintiff knew her travel time was at issue, and she even agreed to have someone ride with her to verify the time that was needed to complete the run. (*Id.* at ¶¶18-21, 24-31, 44). Therefore, Plaintiff cannot dispute that she was on notice of her employer's concerns with her performance.

Although not required, *see Gniotek*, 88 F.2d 241, Plaintiff was provided verbal notice of the October 17, 2013 hearing the *day before* the meeting in which her performance and, ultimately, her suspension were discussed. (Comp. at ¶¶44-45). According to Plaintiff, she was advised of the next day's "meeting," and that its purpose was to "discuss the issue." (*Id.* at 45). Plaintiff does not contend that she was unaware of the nature of "the issue" to be discussed. As such, Plaintiff was provided with advance notice that her performance issues would be discussed at the October 17, 2013 hearing.

In addition, having been provided advance oral notice of the meeting, Plaintiff met with two union representatives the day before the meeting and arranged for their representation and presence at the following day's meeting. (*Id.* at ¶¶44-48). It appears that at the meeting, Defendants discussed Plaintiff's performance deficiencies and their concerns with her run time, and offered evidence supporting these issues. (*Id.* at ¶¶51, 52, 53, 54). Plaintiff was further advised of the accusations regarding her alleged refusal to take and follow driving directions for the assigned route, and of her unacceptable driving. (*Id.*). Plaintiff, who was represented by union representatives, was given an opportunity to respond, and she denied some of the accusations and offered a defense. (*Id.* at ¶¶51-52). Plaintiff does not contend that she was prevented, in any way, from presenting her story and/or defense. Plaintiff was excused from the meeting, and following negotiations between the union representatives and Defendants, Plaintiff was informed of her three-day suspension without pay in lieu of her termination. (*Id.* at ¶58).

As pled by Plaintiff, this factual scenario demonstrates that Plaintiff was given "notice of the charges against [her], an explanation of the employer's evidence, and an opportunity to present [her] side of the story." *Loudermill*, 470 U.S. at 546. Under established case law, Plaintiff was given all of the due process she was entitled to receive prior to her suspension. Thus, no procedural due process violation occurred.

### *Plaintiff's Stigma Plus Claim*

Within Count I, Plaintiff also purports to assert a so-called "stigma plus" due process claim. Such a claim, recognized in the Third Circuit, is premised on an alleged harm to a public employee's liberty interest in her reputation caused by her public employer's adverse employment action. *See Hill v. Borough of Kutztown*, 455 F.3d 225, 235 (3d Cir. 2006). While injury to one's reputation alone is not a "liberty" interest protected by the Fourteenth

Amendment, stigma to one's reputation accompanied by the deprivation of present or future employment may constitute such a protected "liberty" interest. *Robb v. City of Philadelphia*, 733 F.2d 286, 294 (3d Cir. 1994).

To assert such a claim, a plaintiff must show a stigma to her reputation plus deprivation of some additional right or interest. *Hill*, 455 F.3d at 236. This is referred to as the "stigma plus" test. *Id.* To satisfy the "stigma" element of the test, Plaintiff must plead that her public employer made stigmatizing statement(s) that (1) were made publicly and (2) were false. *Id.* The disputed statements must also harm Plaintiff. *Ersek v. Township of Springfield*, 102 F.3d 79, 84 (3d Cir. 1996). To satisfy the "plus" element of the test, Plaintiff must plead the alteration or extinguishment of a right or status previously recognized by state law. *Hill*, 455 F.3d at 237. Once both tests are satisfied, Plaintiff would be entitled to a name-clearing hearing. *Id.* at 236.

At the outset, Plaintiff fails to allege the actual statements made by any of the Defendants on which her "stigma" claim is premised. Plaintiff merely alleges that "Defendant Carsillo, for one, caused this stigma to be made public by repeating her false version of the facts to her office staff, among others." (Comp. at ¶94). Yet, nowhere does Plaintiff identify the alleged stigmatizing statement(s) which she baldly alleges are false. Without the statements, no assessment can be made as to whether, even construed in Plaintiff's favor, such statements could have a stigmatizing effect on Plaintiff's reputation.

Further, in this federal district, a stigma plus claim requires that a plaintiff plead that a timely request for a name-clearing hearing was made and that the request was denied. *See Dombrowski v. Governor Mifflin School District*, 2012 WL 2501017, at *7 (E.D. Pa. June 29, 2012); *Greene v. Street*, 2011 WL 2517144, at *4 (E.D. Pa. June 22, 2011); *Schlichter v.*